# Checking Names of Prohibited Persons Against Records in the NICS Audit Log Concerning Allowed Transfers

The Federal Bureau of Investigation may check whether names of individuals known to be prohibited from purchasing a firearm under 18 U.S.C. § 922(g)(5) appear in records concerning allowed transfers in the audit log of the National Instant Criminal Background Check System in the course of auditing the performance of the NICS, and may share the results of such searches with the Bureau of Alcohol, Tobacco, and Firearms.

October 1, 2001

MEMORANDUM OPINION FOR THE
DEPUTY ASSISTANT ATTORNEY GENERAL
OFFICE OF LEGAL POLICY

This memorandum records and explains oral advice our Office gave you recently. You asked whether it is permissible for the Federal Bureau of Investigation ("FBI") to check whether the names of individuals known to be prohibited from purchasing a firearm under 18 U.S.C. § 922(g)(5) appear in records concerning allowed transfers in the audit log of the National Instant Criminal Background Check System ("NICS") and, if so, whether the FBI may share the results of its searches with the Bureau of Alcohol, Tobacco, and Firearms ("ATF"). For the reasons set forth more fully below, we answered both parts of your question in the affirmative.

Section 922 of title 18 sets out the categories of persons prohibited from purchasing a firearm. Section 922(g)(5) provides that among those prohibited from doing so is anyone

> who, being an alien—
>
> (A) is illegally or unlawfully in the United States; or
>
> (B) except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act).

18 U.S.C. § 922(g)(5).[1]

---

[1] Subsection (y)(2) carves out certain narrow exceptions to the prohibition in section 922(g)(5)(B). It provides:

> Subsections (d)(5)(B), (g)(5)(B), and (s)(3)(B)(v)(II) do not apply to any alien who has been lawfully admitted to the United States under a nonimmigrant visa, if that alien is—
>
> (A) admitted to the United States for lawful hunting or sporting purposes or is in possession of a hunting license or permit lawfully issued in the United States;

Section 102(b) of the Brady Act provides:

> If receipt of a firearm would not violate section 922(g) or (n) [of title 18] or State law, the [NICS] shall—
>
> (A) assign a unique identification number to the transfer,
>
> (B) provide the licensee with the number; and
>
> (C) *destroy all records of the system with respect to the call (other than the identifying number and the date the number was assigned) and all records of the system relating to the person or the transfer.*

18 U.S.C. § 922(t)(2) (emphasis added). The regulations governing the NICS provide:

> The NICS Audit Log will be used to analyze system performance, assist users in resolving operational problems, support the appeals process, or support audits of the use of the system. Searches may be conducted on the Audit Log by time frame, *i.e.*, by day or month, or by a particular state or agency. *Information in the NICS Audit Log pertaining to allowed transfers may be accessed directly only by the FBI for the purpose of conducting audits of the use and performance of the NICS. Permissible uses include extracting and providing information from the NICS Audit Log to ATF in connection with ATF's inspections of FFL* [Federal Firearms Licensee] *records, provided that ATF destroys the information about allowed transfers within the retention period for such information set forth in paragraph (b)(1) of this section and maintains a written record certifying the destruction. Such information, however, may be retained as long as needed to pursue cases of identified misuse of the system.*

---

(B) an official representative of a foreign government who is—

    (i) accredited to the United States Government or the Government's mission to an international organization having its headquarters in the United States; or

    (ii) en route to or from another country to which that alien is accredited;

(C) an official of a foreign government or distinguished foreign visitor who has been so designated by the Department of State; or

(D) a foreign law enforcement officer of a friendly foreign government entering the United States on official law enforcement business.

18 U.S.C. § 922(y)(2).

28 C.F.R. § 25.9(b)(2) (2001) (emphasis added); *see* 66 Fed. Reg. 6470 (Jan. 22, 2001). The accompanying Privacy Act notice establishes a number of "routine uses" that permit the FBI to share information from the NICS audit log in ways that are compatible with the requirements of the NICS regulations. Routine use "C" provides:

> If, during the course of any activity or operation of the system authorized by the regulations governing the system (28 CFR, part 25, subpart A), any record is found by the system which indicates, either on its face or in conjunction with other information, a violation or potential violation of law (whether criminal or civil) and/or regulation, the pertinent record may be disclosed to the appropriate agency/organization/task force (whether Federal, State, local, joint, or tribal) and/or to the appropriate foreign or international agency/organization charged with the responsibility of investigating, prosecuting, and/or enforcing such law or regulation, *e.g.*, disclosure of information from the system to the ATF, United States Department of Treasury, regarding violations or potential violations of 18 U.S.C. 922(a)(6). (This routine use does not apply to the NICS Index.)

63 Fed. Reg. 65,223, 65,226-27 (Nov. 25, 1998).

Thus, the NICS regulations allow the FBI to examine records in the audit log pertaining to allowed transfers to "conduct[] audits of the use and performance of the NICS."[2] The question here appears to turn on whether checking the audit log to see whether names of particular persons known to be prohibited from buying a gun under 18 U.S.C. § 922 appear constitutes "conducting [an] audit[] of the use and performance of the NICS" within the meaning of 28 C.F.R. § 25.9(b)(2). We believe it is reasonable to interpret the regulations in this way.

This interpretation fits with the common meaning of the term "audit." One leading dictionary defines an "audit" as "[a] formal or official examination and verification of accounts, vouchers, and other records." *Webster's New International Dictionary of the English Language* 180 (2d ed. 1958). Checking names of known prohibited persons against the audit log (as well as running them through the system) provides one check on the accuracy of the responses being given by

---

[2] The regulations also allow the FBI to "extract[] and provid[e] information from the NICS Audit Log to ATF in connection with ATF's inspections of FFL records." 28 C.F.R. § 25.9(b)(2). We understand the rationale for the permission to share information with ATF to be that ATF inspections of FFLs are designed, among other things, to uncover instances in which FFLs have misused the NICS, and thus that those inspections constitute an indirect carrying out of the FBI's responsibility to conduct audits of the use and performance of the NICS. Because the circumstances you have asked us about do not involve ATF inspections of FFLs, that portion of the regulation does not appear to be directly relevant to question before us.

the system and thus constitutes an "examination and verification" of the system's records and the accuracy with which they are being handled. We gather that the FBI has been using this method (among others) to audit the NICS since it began, though with prohibited persons drawn from several of the classes defined in section 922, not just with persons prohibited under section 922(g)(5). This consistent administrative interpretation, embodied in practice, also supports the reasonableness of the interpretation of the governing regulations approved here.

We recognize, of course, that mere administrative practice (in the absence of legislative ratification) cannot by itself establish the reasonableness of an administrative interpretation of a regulation. Nonetheless, we consider that practice of particular significance in addressing one possible objection to the interpretation approved here. We gather that although the checking of names the FBI has in mind will serve the purpose of auditing the NICS, the more immediate purpose is assisting the investigation of the September 11, 2001 terrorist attacks. Assisting criminal investigations generally is not one of the purposes for which the NICS regulations authorize the FBI to use audit log records. Nonetheless, we see nothing in the NICS regulations that prohibits the FBI from deriving additional benefits from checking audit log records as long as one of the genuine purposes for which the checking is carried out is the permitted purpose of auditing the use of the system. That the NICS has been using this method of auditing the system all along suggests to us that this method is more than simply a cover for using audit log records for a purpose other than those authorized by the NICS regulations.

Because checking the names of prohibited persons constitutes "support[ing] audits of the use of the system" within the meaning of 28 C.F.R. § 25.9(b)(2), it also constitutes an "activity or operation of the system authorized by the regulations governing the system" within the meaning of the Privacy Act notice. Thus, if the FBI finds a record showing an allowed transfer to a prohibited person, that record indicates a potential violation of the law, and the FBI may share it with the appropriate law enforcement agency. ATF would be the appropriate law enforcement agency to attempt to retrieve a gun the prohibited person may have acquired.

In approving the reasonableness of the interpretation of the NICS regulations you have advanced, we made several cautionary points. First, the checking of names must genuinely be used to audit the use of the NICS. Second, only the names of individuals known to be prohibited may be used. It is not enough to suspect or have some reason to believe that an individual is prohibited. Unless the government knows that an individual is prohibited, running the individual's name through the NICS and checking the audit log cannot serve as a reliable method of auditing the system. Third, the FBI may not use names of individuals who are known to have violated the law unless those violations make the individuals prohibited from purchasing a firearm. Again, the NICS regulations limit the uses which may be made of audit log records. They may not be used simply for general

law enforcement. Only when a known violation creates a bar to buying a firearm can the individual's name serve as an effective tool for auditing the NICS.

SHELDON BRADSHAW
*Deputy Assistant Attorney General*
*Office of Legal Counsel*